UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SALVATORE J. MORETTI,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL MORDAGA, JOHN DOE, JANE DOE,<br><br>Defendants. | Civ. No. 17-4463 (KM-JBC)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Salvatore J. Moretti, *pro se*, is a prolific litigant; his complaint lists some two dozen filed actions. (ECF no. 1 at 15–16) In this Complaint, he sues a single defendant, Michael Mordaga. Mordaga has filed a Rule 12(b)(6) motion to dismiss the complaint for failure to state a claim, as well as a short reply brief. (ECF nos. 27, 41) Moretti has filed multiple documents, and hundreds of pages of attachments, that may be construed as a response to the motion. (*See* ECF nos. 31, 34, 35, 36, 37, 38, 39, 43, 44, 45, 46, 47) For the reasons stated herein, the motion to dismiss will be granted.

**I. THE COMPLAINT**

The Complaint is brought under "U.S. Const. Amed. Fourth, Fourteenth, Civil Rights 42 U.S.C. Sections 1981, 1983, 1985, 42 USC Sect. 12101, 3631, etc." The Complaint is wide-ranging, defying summarization. It covers a bewildering variety of personal and historical events, which I do not summarize here. Instead, I extract from the Complaint the allegations that mention the only named defendant, Michael Mordaga.

1

Mordaga worked in the Bergen County Prosecutor's office and lives in Paramus, New Jersey. He used the same CPA as Moretti, and went to the same law school as the County prosecutor, Molinelli. A labor activist named William Kresja died in June 1, 1988, at a time that he was "under the eye of Mordaga." In 1994, Moretti was "jailed, for no reason, for over a month, under the surveillance of Police Director, Police Officer, Police Detective, Prosecutor Office Detective Michael Mordaga." Mordaga coveted the job of Bergen County Sheriff. "Rival Assemblyman Ken Zisa opposed Mordaga, and Zisa was replaced by Mordaga, Director of the Police."

Mordaga "graduated from Paramus High School," where he played football. Moretti first met Mordaga when sunning himself on his front lawn. The two got in a fight when Moretti identified himself as the property manager.

John Doyno, a CPA used by Moretti, was also employed by Mordaga to set up a corporation (from the context, possibly in the 1980s). Moretti only found out about this years later. Moretti also learned years after the event that Doyno had assisted Mordaga in building a "$1,300,000 show place" in Paramus, near a church that the Moretti family had attended since 1959.

Moretti read in New Jersey court reports that Mordaga, when assigned to the narcotics squad in Hackensack, broke into the apartment of one Leo Jones without a warrant.

There was a scandal surrounding the Bergen County Sheriff that required the return of $225,000 in 2001, and the Sheriff was replaced. "In retrospect, it is difficult to connect this event to the report by the Record newspaper that Michael Mordaga wanted the Bergen Sheriff's job." It was reported, however, that Mordaga wanted to be the Bergen County Sheriff and the Hackensack Police Chief. After the chief was forced to resign, Mordaga "ran the Hackensack police department as the civilian police director."

In or around 2007, it emerged that there was a "kickback of $100,000 to Michael Mordaga in the Teterboro jet crash," apparently in connection with Mordaga's referral of an attorney. Mordaga "operated DS Universal Consultants

and made over $170,000 a year." The Record reported in 2016 that Mordaga owned several houses in addition to his $1,300,000 showplace.

"In summary, many police officers have had their lives wrecked by Michael Mordaga, and the Bergen County Prosecutor's Detective Squad. It is time to assess damages." The nation's military "entered WWII with high ideals, ideals which we do not see exhibited by Michael Mordaga and John Molinelli." A law school graduate, Moretti would have improved the image of Hackensack, but Mordaga has not done so. Through the "intrigues" of men such as Mordaga and Molinelli, the town has a "ghost town image," with many commercial vacancies.

Moretti seeks compensation for loss of services (apparently, services to his real estate properties) "during the twenty years of Mordaga's serving as a detective."

The Complaint touches on many other subjects, which bear no obvious relation to the sole defendant, Mordaga. The defendant accurately lists some of them: "inter alia, World War II, issues with a barking dog, the fact that [Moretti] is a storied author (with references to his books), various political elections, arson, assault, housing issues, the election of Superior Court judges, banking issues, robbery and theft, foreclosure actions, jet crashed, issues getting his parking ticket validated when he appeared for jury duty, the downfall of the Sears store in Hackensack, meetings with President Roosevelt at Hyde Park... , and meetings at the Vatican and with General Patton." (Def. Br. 5–6)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable

to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

The United States Court of Appeals for the Third Circuit has explicated the *Twombly/Iqbal* standard on several occasions. *See, e.g., Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 70-73 (3d Cir. 2011); *Santiago v. Warminster Twp.*, 629 F.3d 121, 129-30 (3d Cir. 2010). In doing so, it has provided a three-step process for evaluating a Rule 12(b)(6) motion:

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to a state a claim for relief. *See* [*Iqbal*, 556 U.S.] at 675; *Argueta*, 643 F.3d at 73. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

4

*Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

Where a plaintiff is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

### III. DISCUSSION

This Complaint fails to meet the minimal standards of pleading, even allowing for Mr. Moretti's *pro se* status (although he states that he is a law school graduate). The Complaint is generalized and diffuse. It does not clearly state what the legal grievance is. It does not state how Mr. Moretti was damaged by any breach of a specified legal duty that Mordaga owed to Moretti. Nor does it state how the factual allegations relate to any recognized cause of action. The Complaint does not state causes of action, but opens with a scattershot listing of federal statutes, with no indication of how the factual allegations relate to them.

Although it is unnecessary to rely on them, other apparent legal defects lurk behind the failure to plead with the requisite specificity. Much of the Complaint, even if it had been pled properly, would seem to be time-barred. Claims for personal injury or property damage, including Constitutional claims that borrow a state statute of limitations, would have a limitations period of, at most, six years, and in most cases less. *See* N.J. Stat. Ann. §§ 2A:14-2, 14-1. *See Napier v. Thirty or More Unidentified Federal Agents*, 855 F.2d 1080, 1087 (3d Cir. 1988); *Evans v. Gloucester Twp.*, 124 F. Supp. 3d 340, 354–56 (D.N.J. 2015). The Complaint, however, relates

5

events that either explicitly or inferably date back to the 1970s, 1980s and 1990s. One alleged incarceration of Moretti, for example, can be placed around 1993 from the context. One front lawn assault is alleged to have occurred in 1993; another, allegedly involving Mordaga, seems to be alleged to have occurred before the death of Mr. Kresja in 1988. Disputes over, and damage to, certain of Moretti's properties (which in any event do not seem to have involved Mordaga) seem to date from the late 1980s. One such property, 390 Park Street, is alleged to have been lost in foreclosure and subjected to a Sheriff's sale in 1998. The arrest of an associate, Ms. Stedtler, from the context, seems to have occurred before the appointment of Ellen Koblitz to the Superior Court bench, which occurred in the early 1990s. An alleged theft at Citibank dates from 1994. An alleged jailing for failure to maintain one of Mr. Moretti's buildings is alleged to have occurred in 2001.

Questions of qualified immunity for Mr. Mordaga, who is alleged to have been a police officer, remain unexplored. Also unexplored are issues of *res judicata*—i.e., whether any of these allegations were the subject of Mr. Moretti's many prior litigations.

There is one final matter. Also pending before the Court is Mr. Moretti's motion to stay a tax foreclosure on certain real property, instituted in State court by Effect Lake, LLC, the holder of a tax sale certificate. (ECF no. 22) Effect Lake, LLC, is not a party to this case, although it did file a response to the motion (ECF no. 24). This case has nothing to do with the issues, whatever they may be, in the tax foreclosure proceeding. Effect Lake represents that it has no connection with the sole defendant, Mr. Mordaga, and the Complaint alleges no such connection. I set aside legal issues regarding the court's lack of authority to enjoin a state tax proceeding under the Tax Anti-Injunction Act, 28 U.S.C. § 1341. The dismissal of the complaint renders the motion moot in any event, and it will be denied.

## IV. CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss the complaint (ECF no. 27) is granted, and the plaintiff's motion to stay a tax foreclosure (ECF no. 22) is denied as moot. An appropriate order accompanies this opinion.

Dated: August 24, 2018

**KEVIN MCNULTY**
**United States District Judge**